Case number 20-3346 Raymond Twyford v. Tim Shoop. Oral argument 30 minutes per side. Mr. Keller for the appellant. Good afternoon, Mr. Keller. Good afternoon. I understand you wish to reserve perhaps five minutes for rebuttal? That's correct, thank you. That's fine and you may proceed with your argument. Chief Judge Cole and may it please the court, Zachary Keller on behalf of the warden. I'll back up to this court's jurisdiction in a moment, but if I might first quickly preview the merits. And on the merits, I think the briefing in this appeal has narrowed the issues quite a bit. The parties agree that this was not an act of the habeas discovery power, so I think we can save for another day whether that power might allow this type of order in the appropriate case. And at this point, no one is defending the district court's logic for why it thought it had jurisdiction to issue this order. So what we're down to is Mr. Twyford's argument that the transport order was justified derived from the power in 3599F. That's wrong for two reasons. First, as this court held in Bays, that provision provides a funding power and nothing more. And that holds true whether you do the provision just on its own or in combination with the All Writs Act. And second, even if we set Bays aside, Mr. Twyford has failed to carry his burden under the reasonably necessary standard of showing why this evidence he wants is relevant to and admissible in his federal habeas case. So before I dive too far into those issues, though, I understand there's a question regarding this court's jurisdiction to hear this immediate appeal. I think the shortcut there is that whatever we might think the best answer is for this court's jurisdiction, one of two paths, either the collateral order doctrine or a mandamus allows this court to hear this case. I don't actually think it's necessary for the court to decide as long as it feels like one of those paths justifies its review. This court has said on a couple different occasions that it doesn't always need to choose between those two options. I could interrupt. Normally, I would think in a civil case, discovery orders are not immediately appealable under the collateral order doctrine or under mandamus. So why should this be any different? I know it's not a discovery order, but it's an order that is ordering the state to transport Mr. Twyford. And why isn't that reviewable at the end of the case? Sure, Your Honor. A couple different points. First, about why it's different than your ordinary discovery order, and then why an appeal at the end of the case won't be effective. So why is this different than a discovery order? I think you have two reasons. First, in a typical discovery dispute, you're not going to have a dispute about the court's underlying jurisdiction. You might have a dispute about whether it abused that power, but it won't be a jurisdictional matter. Here, we have a dispute about whether the district court even has this power to begin with. And that issue becomes even more important for the second reason, which is that we have a federalism concern here. Admittedly, mandamus cases, Your Honor, but if you look at even mandamus cases in more ordinary civil settings involving the state, I'd point the court to the University of Michigan case, as well as the 2008 case involving Tennessee. I believe it was named John B. v. Goetz. Even in those ordinary civil settings, this court held that federalism concerns were important enough to justify a media review. And I think we actually have a federalism concern of a higher magnitude here because we have state criminal proceedings at stake. We have a federal court where there's a serious question about the scope of that federal court's power. Are you saying then in any habeas case involving a state conviction that a discovery order ordering the warden to produce something is immediately appealable under the collateral order doctrine? I don't think the court needs to go that far. We certainly would agree that federal habeas is a different animal than ordinary civil discovery, and it's a much more extraordinary act. But I could imagine acts of federal habeas discovery that won't be so intrusive as forcing the state, without any finding of violation, to take a convicted murderer outside the prison walls into a public setting. So I think, again, the magnitude of the importance here is greater than just even your typical federal habeas discovery order. If Mr. Twyford had appendicitis, would he be transferred to the Ohio State Medical Center for an appendectomy? I believe I would expect so, Your Honor, and if he wasn't, I think you'd have a 1983 question about medical indifference to a serious medical need. Because it's not possible to give him the appendectomy in the prison, right? Correct, Your Honor. Yeah, of course. And I do think that would raise a potential Eighth Amendment issue if the state refused in that setting. But that would be about the conditions of confinement, not about the federal habeas. Right, but it goes to the question of whether the state is able and has procedures in place that would allow it to transport a death row prisoner to the Ohio State Medical Center. It's not like he's being transferred to the Mayo Clinic in Minnesota or something. Sure, Your Honor, and I think that goes to the third prong of the collateral order doctrine, whether or not I'm not not disputing that we have the capability to take Mr. Twyford to the hospital, but if we're forced to do that, and we have to wait till the final determination to appeal, we're not going to be able to unring that transport. And there are risks and costs associated anytime you take a prisoner outside the prison walls into the public setting. So we try and limit those trips as much as possible. And I think this court can take judicial notice of the fact that prison escapes do sometimes happen and that a common tactic is trying to escape from a hospital setting when you're on a hospital visit. Tennessee, back in December, had one of those instances. If you look back in 2007 in Ohio, we had a prisoner escape from a hospital setting and actually take a weapon from a guard and then go on a bank robbing spree. Now, admittedly, those things are outside the record, but I certainly think this court can take judicial notice of the common sense, just reinforcing the common sense point that when you take a prisoner, especially a dangerous prisoner, outside of the prison walls, there are risks there. And we are resistant to that here, especially because Mr. Twyford has failed to justify why he needs this evidence for his federal habeas case. So I'm about to get into the merits, but I do want to pause for a brief moment, just in case there are any other questions about this court's jurisdiction. And if I may end just quickly doing mandamus, this court has said that mandamus is a proper vehicle for judicial, for correcting judicial usurpation of power, as well as clear abuses of discretion that happens to align perfectly with our merits theory here. On the merits, Mr. Twyford's theory is that the 3599F provision is what gave the district court the power to issue this transport order. Now, he's wrong about the scope of that power, and I'll back up to that in a moment. But I think it's telling in this case that even if we assume he's right, that we're under the reasonably necessary standard of iestis, he completely fails to meet that standard because he has never identified a developed, at least given a developed explanation for how this evidence he wants is relevant to and usable in his federal habeas case. And that's not just the state saying that. If you look at page ID 7109 of the district court's transport order, the district court also recognized it was not in a position to tell or even predict whether this evidence would be usable in his federal habeas case. That should have proved fatal to the request, and I think it was legal error for the district court not to hold so. Well, isn't there a difficulty in that he hasn't had the PET scan, CT scan, and therefore he doesn't know what the evidence is going to be and how it will be able to be utilized in the various claims that he has? I don't think so, Your Honor. I certainly think both he and his doctor have an idea of what they're looking for, and I certainly think, even again, if we assume the iestis standard is the appropriate standard, that requires a movement to unpack their legal theory and show the possible utility of the services they're asking for. And here Mr. Twyford has consistently resisted giving more than just bits and pieces of how he thinks he might use this evidence, and let me give my best guess as to why. Reading between the lines, Mr. Twyford seems to be saying he wants to challenge his trial counsel and his experts' failure to investigate his neurological defects. He wouldn't be able to use that type of evidence in federal habeas, because if you look at post-conviction proceedings, and most specifically Claim 7, which you can find at Record 98-3, Page ID 2139, Mr. Twyford's post-conviction relief petition already raised that issue, already contended that his trial counsel and expert were deficient for failing to investigate his neurological defects. So we would be, for that type of claim, we would be under 2254D and Penholster, and no new evidence would be able to come in, and you never even get to the type of Trevino-Martinez analysis he alludes to, but never actually develops in his briefing. Now, all of this assumes that the district court even has the power to grant this transport, but Bayes forecloses Mr. Twyford's reading of 3599F. If you look at the Bayes decision, the principal holding was one of statutory interpretation, and specifically I direct the court to 342-43 of that decision. The court held that, the majority position held that the provision provides a funding power and nothing more. In other words, it's a check on the federal purse strings. We want to make sure that when we're granting federal dollars for these types of services, a court has approved them as reasonably necessary. But Bayes was decided as a clemency case where the question was whether the federal court should be able to authorize the spending in support of a state clemency petition, right? That's absolutely correct, Your Honor, but a necessary part of the holding was to interpret the words of 3599F, and nothing about those words change when you move from a state clemency proceeding to a federal habeas. And in fact, I think there's a real good tip-off that it's the same conclusion in habeas, and that's, if you look towards the end of the Bayes court's analysis, it engaged with the Southern District of Ohio's decision in Neils. And Neils was a habeas case, and the Sixth Circuit, your court disagreed with Neils, not because of the different setting, but because Neils employed the wrong interpretation of the 3599F provision. Another way of putting this, Your Honor, is from a presidential standpoint, the words in the F provision mean what the majority held in Bayes that they mean, and there's nothing about those words that changes as you move from clemency to habeas. How does the AISTIS decision from the Supreme Court impact Bayes? It doesn't, Your Honor. AISTIS was a pure funding case. It wasn't about transporting, forcing an unwilling participant to do something in furtherance of a prisoner's litigation. So I don't think you would, there's any way to say that AISTIS undid Bayes. You started your discussion on the merits earlier at the beginning of your argument and said that the only basis that we should consider for the district court's jurisdiction was 3599F. Why shouldn't we actually review what the district court said, which was to look at the All Writs Act in conjunction with the habeas statute? Why shouldn't we consider whether the district court was correct in his own analysis? Sure, Your Honor. I'll give the procedural point, but then I will actually also go to the substantive point about why the district court was wrong, too. Procedurally speaking, we spent our whole brief outlining why the district court was wrong, and Mr. Twyford made a strategic decision to abandon that rationale and argue something else. So I do think procedurally the court would be justified in just stopping there. But if the court feels differently, the district court erred in how it used the All Writs Act because you cannot use that act in a way that undermines or sidesteps other federal law, and that counts for both federal statutes and federal procedural rules. And here at the very least, we have a sidestep of a provision of federal habeas law, the 2241C5 provision that outlines the very narrow circumstances where a court sitting in habeas gets to order the movement of a state prisoner without finding a violation first. And second, we also have a dodge of procedural rules. Federal habeas has its own set of procedural rules that the Supreme Court has promulgated. Those include a rule for discovery. And as I mentioned in opening, I don't think we need to reach here how far that discovery power goes because Mr. Twyford has passionately disclaimed that he is seeking discovery in this case. Given the combination of those things, I don't think you can use the All Writs Act here. I think it's very telling that it was unclear once the district court found it had the jurisdiction, it couldn't actually point to what standard it was applying for why it was using that power. And I think that's a tip off that the power really shouldn't be avoiding the Bracey discovery standard or what the jurisdictional limits set forth in 2241. You're basically arguing then that even if there was compelling, a compelling statement by the doctor here and a compelling linkage to the habeas claims that the district court would not have the power under the All Writs Act to order that the prisoner sentenced to death be examined through a CT scan or a PET scan or anything like that. Under the All Writs Act, that's correct, Your Honor. I think the closer question would be, it sounds like from your hypothetical that you would have satisfied the Bracey standard for habeas discovery. And I think the closer question would be whether the habeas discovery power would allow for this type of transport order, but we know we don't have to get here. But why would we be calling it discovery? Usually you think of discovery as finding out information from the other side, not finding out information about your own body. I disagree, Your Honor. For example, if you look at Rule 26, expert related testing is certainly built into our normal understanding of what discovery encompasses. But in order to get the exam, you're jumping to say that is discovery, whereas you're getting the exam of yourself here. If you were not a prisoner, you would go to a doctor and say, tell me what's wrong with me. It seems to me to be different than your normal discovery situation. Well, I would point out, Your Honor, if you went in a normal civil case, if you went and got an exam and then your expert doctor relied on that to issue some type of opinion, you would need to disclose that as discovery. I don't disagree on that. I guess, Mr. Keller, I'm sorry to interrupt. Maybe this piggybacks on Judge Moore's question. Would the standard not be, you know, whether it's necessary or appropriate in the aid of the court's habeas jurisdiction in terms of whether the order should be issued? Well, the standard would be the Bracey discovery standard, which is very similar to that, but not quite. And that's why we do think Mr. Twyford fails also because he has never come forward and developed a justification for why he needs this evidence. But what I'm really saying is the All Writs Act does not allow you to sidestep either the 2241C5 provision or the discovery rules. I think those are the best fit for knowing what power the district court had in habeas. Before sitting down, so to speak, I do want to go over some of the legal and practical implications here. Legally speaking, I don't think there's any way to rule for Mr. Twyford without creating a circuit split. If you rule for him on jurisdiction, you're going to be breaking with three, if not four, other circuits that have held that prisoner transports satisfy the collateral order doctrine. If you hold for him on the funding provision, not only will you be in conflict with Bays, but you'll also be breaking from the Ninth Circuit's decision in Jackson and likely the Fifth Circuit's decision on remand in Iestis. And if you hold for him under the district court's theory, you're going to be splitting from the Seventh Circuit's decision in Ivy and the Third Circuit's decision in Lilly. And now with regard to the practical implications, I do want to note that in Ohio, we've already seen these types of requests. In other cases, Elmore and Trimble are the ones that we cite in the brief. So it's already not a unique thing to see this type of request. And if you bless the transport order here under the limited showing that Mr. Twyford made, that should give the court pause. Because we know from AEDPA, we know from Harrington and Penholster, that it's state courts that are supposed to be the principal forum for litigating state constitutionality, excuse me, of state court proceedings. And if you accept Mr. Twyford's idea that there's some easy to meet permissive standard for expanding evidence in federal habeas, you're going to be going against those general principles. You mentioned these two cases, Elmore and Trimble. Were they appealed to the Sixth Circuit? I don't believe so. Both the requests were denied in those cases. Trimble didn't think it had the power, the court in Trimble didn't think it had the power after Bays. And the court in Elmore adopted a similar theory to the district court here on jurisdiction, but then held that the transport was not justified in that case. So you say they were, and I have looked at them, they were decided against the petitioner. So would the petitioner be able to appeal under the collateral order doctrine? No, I think there's actually a Seventh Circuit decision on this. I think it's called Barnes. That makes the point of, you don't have the same, on a final determination, the petitioner can argue, he should have gotten this transport, and there's not the same unringing of the bell that happens when you force the transport to occur beforehand. So it's a one way street on the collateral order doctrine. I think so, yes. I don't think there are the same federalism implications when it's the petitioner, when the transport order is denied. To briefly recap, your honor, two reasons why this court should reverse the district court lacked the power to order the transport order, whether you view it in terms of the 3599F provision or the All Writs Act. And even if we assume otherwise, Mr. Twyford has failed to justify that type of relief in this case. Thank you. I'll reserve my remaining time. Okay, thank you, Mr. Keller. Mr. Benson. Good afternoon, and may it please the court, Michael Benza on behalf of Mr. Twyford. I want to correct one thing first that Mr. Keller offered. Mr. Twyford has not abandoned the logic and arguments that were submitted to the district court nor the district court's foundation for its authority to issue this order. The district court's order vested under the All Writs Act under two grounds, under its authority under 3599 to ensure that counsel was given the resources and access to materials that 3599 ensures, but also to protect the district court's merits determination jurisdiction under 2254. So I want to be clear, there has been no abandonment by Mr. Twyford of that logic of the district court, and that logic is what vested the authority of the district court to grant this order. Now turning to the issue of this court's jurisdiction, Mr. Keller puts the cart before the horse. The issue in this court is whether or not Mr. Keller and the warden has demonstrated that this court has valid jurisdiction. Mr. Twyford doesn't have to show that this court lacks jurisdiction. Mr. Keller has to demonstrate in fact that there is jurisdiction. Jurisdictional requirements under collateral order require a demonstration of three concrete determinations. First, there must be a conclusive determination of a disputed question. Second, there must be a resolution of an important issue that is separate from the merits. And third, the district court's determination must be essentially unreviewable upon appeal. On all three grounds, the warden's appeal fails. So first, regarding the issue of a disputed question, the fact that the warden disagrees with the district court's order does not convert that order to a disputed question. Rather, a disputed question is defined as that which is a claim of right that is separable and collateral to the orders of the merits of the underlying litigation. Well, isn't the warden claiming that he, meaning the state, has a right not to be forced to transport your client? That's true. That is a disputed question as a dictionary definition, but that is not a disputed question as a question of law. Every motion that is filed that is opposed by the other side is a disputed question. But just because a judge resolves that question does not create a collateral order appeal of the side that disagrees with that order. Rather, the determination must be a final resolution of a right that is not the right of the final order on the merits of the underlying litigation. This is not that type of final order. The order to transport is akin, despite what the warden is now disclaiming, a discovery order. Discovery orders are not subject to collateral order because, yes, they do impose a burden on the party obligated to comply with discovery, but that is reviewable upon appeal. I'm sorry to interrupt. The warden argues, I think, that if we accept your reasoning here, that we would run afoul of at least three other circuits, I think the third, the seventh, and the ninth, which have found jurisdiction under the collateral order doctrine when a district court orders transportation of state prisoners. So what's your response to the fact that we may be creating a circuit split if we buy into your argument? So I expressly disagree with the warden's position on creating a circuit split. If you look at the cases in which collateral order jurisdiction has been vested, there are concrete legal rationales that implicate the reason to grant collateral review. So, for example, in the Michigan case, it was that it was an ex parte proceeding. This case is not an ex parte proceeding. The warden has been fully advised. We, in fact, sought in the district court to proceed ex parte. Judge Marley ordered us to proceed publicly. The warden was on full notice and actively engaged in the litigation, and Judge Marley made his decision. So there are factual and legal predicates that are different between those various circuit cases in determining whether or not collateral order doctrine applies. And the collateral order doctrine looks to the underlying nature of the order itself in determining whether or not there is jurisdiction. In the Seventh Circuit case, I believe the issue in that case was transporting a prisoner to federal court to provide legal assistance to a pro se prisoner litigating a 1983 claim. So, again, factually predicate differences between these cases is what makes the difference between a valid collateral order appeal and an invalid collateral order appeal. Those cases predicated on the three-pronged test properly determined that there was jurisdiction for the appeal based on that test. In this particular case, however, that circumstance simply does not exist. Well, your opponent argues that the state has a fundamental interest in making sure that a prisoner does not escape and does not harm other people, and letting a prisoner out of prison, even to go for a PET scan, has that risk. So isn't that, isn't the transport, if it occurs, completed and an appeal at the end is of no use to protect the state's asserted interest? It is true that the issue of the transport itself would not be reviewable. But the issue is not whether or not the transport is reviewable, but whether or not the impact of the order is ultimately reviewable. Again, I know that the warden, despite his briefing arguments about why this is an invalid discovery order, is now disavowing that. But that's why discovery is not subject to collateral appeal. Yes, I have to comply with a discovery order. That entails costs, burdens, expenses, may even involve risk of information that I don't want to be revealed. But that's not subject to collateral order review. What's subject to the review is the admissibility of the materials that is discovered. And that's the exact same circumstance we face here. As to the issue of the burden, the risk, and the expense, the warden does this transport daily. The medical facility that Mr. Kweifer would be transferred to is a Department of Corrections facility. He would never leave the custody of the Department of Corrections. He would be transferred from Chillicothe Correctional, under the care and guards of the Ohio Department of Corrections, to the Ohio State Medical Facility's Ohio Department of Corrections section. So the physical place that he would be transported to is actually controlled by the Department of Corrections? Correct. It is a prison within the Ohio State Medical Facility. So it has guards and lockdown? Locked ward. I don't have the site in front of me. The link to the DRC's website that describes this is in our briefing. And the PET scan would be taking place in that area? Yes. And does the record show or do you know whether any prisoner has escaped from that part of the Ohio State Medical Center? I have been unable to find any evidence that any inmate has ever escaped from or during stay at Ohio State Medical Center or during transport to the Ohio Medical Center. I will tell you, Your Honor, that based on what we understand, this is done on a daily basis from institutions across the state of Ohio. Inmates who suffer from COVID are transferred to ODRC at Ohio State Medical Center for care. I've had my own clients who have suffered catastrophic injuries transported on an emergency basis to Ohio Medical Center for care. This is their hospital. This is not a private hospital. This is not an open and public wing of a hospital. This is the Department of Corrections wing at the Ohio State Medical Facility. So the issue regarding burden, yes, there is a burden, but it is a burden the warden, as Mr. Keller conceded, would engage in if the inmate required medical care. For example, Mr. Twyford needs his neurological exam because at the age of 14, he put a gun to his head and he put a .22 bullet behind his head. He lost an eye. There are bullet fragments in his head. And he has suffered neurological deficits as a result of this traumatic brain injury. The extent of that injury is what we are seeking to investigate. If Mr. Twyford's prosthetic eye was to become damaged and dislodged, the replacement of that eye, the surgery entailed of replacing an eye, would be done at the Ohio State Medical Center. So he would be transported to the hospital that we are asking to be transported to for the medical care that he is entitled to receive and the warden concedes would have to be given. So yes, there is a burden, but it is not an undue burden. Yes, there is some hypothetical risk, but as the transports to this institution to and from on a daily basis demonstrate that risk is zero. And the expense, yes, expense happens, but litigation is expensive. The state pays the costs of litigation all the time. The fact that you have to incur a cost in litigation is not grounds to invoke the collateral order doctrine. So you would analogize the expense of transport then to the expense of participating in a discovery matter. Correct. It's akin to that. I agree with Mr. Keller. This is not an issue of discovery. This is an issue of our investigation. It is not an issue of discovery, but it is akin to the costs associated with complying with discovery. I may oppose in a civil matter the request for discovery. If the judge orders discovery, I have to comply, even if that entails a significant amount of expenditure of cost, resources, and energy on my part. And that doesn't create collateral order jurisdiction. Additionally, the issue of collateral order requires a showing on the second part by the part of the warden, and that is that it resolves an important issue separate from the merits of the claim. Now, I don't disagree that the ability of the district court to issue orders is an important question. But that isn't the standard for a determination under collateral order. The fact that we may want to know the answer to whether or not a district court has this authority does not generate the issue of this is an important issue separate from the merits. Rather, the issue is whether or not it finally resolves an aspect of the case independent from the merits. So the primary example in which you see this type of an order is, for example, in a bankruptcy case. When the trustee is seeking to liquidate or disperse a body or a portion of the body of an estate to the detriment of other debtors or to other claimants on the issue of the estate, then you may have a collateral order because the distribution of that race of that body would in fact be something that is a final determination, even if it doesn't ultimately conclude the merits of the bankruptcy process. We don't have that kind of circumstance here. There is nothing that is going to be able to be set in stone if this transport order is complied with. Yes, the warden has to comply with the order. That's true. But that's not the conclusion of an important issue that is ultimately undecided by the higher court or even by the district court. So this issue fails on the second prong of the collateral order doctrine. And finally, on the issue is that it is effectively unreviewable upon appeal. Well, it is reviewable because if the district court does not have the authority to grant this order, then this court on appeal and even Judge Marbley, when any information subject to this investigation is presented to him, would make the determination that that material is or is not admissible in the habeas proceeding. So again, thinking of how the warden initially objected to this and how the warden briefed his objections to this order as a discovery order, the question of whether or not it is discovery and that information can be admitted in court will be determined at a later date. If Mr. Twyford in fact seeks to bring that information to the district court. But one of the reasons that we expressly requested this in terms of our investigation is that we do not know where this information may take us. Rather, what it is, is our job to investigate the materials and information that may lead to legitimate claims being presented to the district court. So the issue of this is no different, for example, than if the warden decided that he couldn't be bothered with attorneys coming down to the institution to visit clients and issued an order that simply said no attorneys can visit. I don't think that the warden would actually disagree that the district court would have authority under the All Writs Act to order access to counsel appointed under 3599. This is the exact same circumstance. The problem is the warden, the institution, simply does not have the medical facilities necessary for us to do our investigation. Additionally, Dr. Shari, our expert in this matter, has already visited the institution and conducted preliminary neurological testing. Just as the warden could not prevent the attorneys from coming into the institution and doing this testing, the warden could not prevent our expert from entering the institution. That also, however, does entail a burden, a risk, and an expense of guards necessary to transport and escort Dr. Shari through the institution, making Mr. Twyford available, providing facilities for testing, allowing Dr. Shari to bring materials in. All of those things also entail the same concerns that the warden now claims prevent compliance with this order. And yet if the warden prohibited access to that case, there's no doubt that the district court would have authority under the All Writs Act in furtherance of both 3599 and 2254 jurisdiction to order the warden to comply with those requests. This is no different. And that's why that issue is in fact subject to appellate review, because if there is material that gets presented to the district court because of some legal issue, factual issue, or whatever it may be, at that point, the district court would review it and determine its admissibility. And upon appeal on the merits, this court would review that issue. I would direct this court to the decision in Dixon v. Howe. The district court in Dixon authorized discovery, depositions, and ultimately conducted an evidentiary hearing and issues of ineffective assistance of counsel prior to Penholster. The appeal was lodged. Penholster was decided, and on appeal, this court determined that the material that was developed in the district court was invalidly admitted pursuant to Penholster and did not consider that information during the appeal. That's the same circumstance here. The information that we investigate and determine will be subject to, maybe, presentation to the district court. At that point, that's the appealable order that would be subject after merits determination to this court's review. Turning to the issue of the merits, I'm not sure exactly what the warden's objection remains now, since he has disavowed his reliance on this as a discovery order. On that part, we do agree. This is not a discovery order. It is, however, an order that allows Mr. Twyford to conduct the investigation into his matter. Why is it reasonably necessary, under the language of 3599, for this service to be provided? Well, as we outlined and as Judge Marbley found, it pertains to two primary areas of the petition itself. First, it goes to the issues of cause and prejudice. The district court has already determined that a multitude of Mr. Twyford's claims are procedurally defaulted. That decision, however, was made prior to this court's decision in White v. the warden of the Ross Correctional Institution, finding that Trevino, in fact, applies to Ohio's post-conviction process. So, as ISTIS itself determined, the provision of services to investigate and determine issues of cause and prejudice is exactly what 3599 is entitled to do. ISTIS was a denial of funding for issues of cause and prejudice, and the Supreme Court specifically acknowledged that that is, in fact, an appropriate invocation of 3599's authority. So, ISTIS clearly says that on the merits, the district court had the authority to issue this order. Additionally, the issue goes to the merits of a multitude of Mr. Twyford's claims. In particular, it goes to the issues of his ineffective assistance of counsel claim, claim one of his petition regarding the failure of trial counsel in spite of knowing of the neurological damage to conduct his neurological testing. It goes to the issue of Mr. Twyford's competency to stand trial. There was a significant amount of discussion and litigation regarding medication and treatment of Twyford pre-trial regarding competency. There is an issue of the impact of his neurological damage on his statement, whether it was involuntary and consensually given because of his neurological brain damage. Additionally, there goes to the issue of ineffective assistance of counsel at mitigation and the failure of the mitigation expert, Dr. Gordon, to, in fact, conduct this discovery or to conduct this testing. At no point has Mr. Twyford been subjected to the neurological testing that has been requested. And yet, trial counsel knew about it. Trial counsel's expert knew about it. Nobody requested the testing. This issue was raised in state post-conviction, but post-conviction counsel also did not conduct the neurological testing. This is our obligation as counsel for Mr. Twyford to investigate this neurological testing. This may, in fact, result in evidence that we wish to submit to the district court, and that litigation will come based on the law and the facts at that time. But this is also our investigation. And the only reason that the warden knows that we are conducting this investigation is because we need the order of transport in order to have access to Mr. Twyford's brain. Quite frankly, we do investigation that the attorney general and the warden have no idea about. We investigate all sorts of things. Our investigators interview witnesses, talk to jurors, talk to doctors. We have evaluations, none of which the warden has any idea that we are conducting because it's an investigation. The only time the warden, the attorney general under 3599, has any opportunity to understand what it is that we are investigating is if that investigation results in materials that we wish to present to the district court. I will say, having done capital litigation for many years now, we do a lot of investigation that never takes us to new evidence and new material for admission in federal court. That doesn't mean that we can't and don't have an obligation to do that investigation. And at its core, that's exactly what the district court held. The district court determined that access to this testing is in fact reasonably necessary for counsel to do our jobs. To determine exactly what is the damage that Mr. Twyford suffered when he shot himself in the head at the age of 14. And then, if proper, to bring that information to the district court in support of any pending or even new claims. But until that time, this issue remains simply an issue of our ability to do our jobs in representing Mr. Twyford. There are no further questions. We stand on our briefs and we request that the court validate dismiss on the basis that this court does not have jurisdiction to hear this appeal. And in the alternative that the district court in fact had jurisdiction to authorize this order of transport. Remand this to the district court for compliance with the order at such time in which it is safe based on COVID and other issues to conduct the testing. Thank you. Okay. Thank you, Mr. Benza. Mr. Keller, you've got, I think it's five minutes of rebuttal. Thank you, Your Honor. Several responsive points. I'll try and organize them in three parts. One, points about this court's jurisdiction. Two, points about the district court's lack of jurisdiction to order the transport. Three, points about Mr. Twyford's failure to justify his request. So on this court's jurisdiction, I disagree with my friend on the other side about the state of the law. It's not enough to point to minor factual differences between this case and other circuit authority. You need to actually point to a fact that makes a material difference to the analysis. For example, the Ninth Circuit's Jackson analysis on the collateral order doctrine did not mention at all the ex-party nature of the request. But in any event, even if the court is on the fence about the collateral order doctrine, and we don't think it should be, I would note that I think I heard a concession in there that at the very least we'd be requiring a field trip from the Chillicothe Institution to the Ohio State University. But even if we're on the fence about the collateral order doctrine, I didn't hear any argument as to why this court doesn't have the power in mandamus to correct either a clear abuse of power or a judicial usurpation of power. I certainly would again repeat that this case is of an equal, if not greater magnitude of importance than the University of Michigan case, which involved a university president, whether a university president had to attend a settlement conference, or the John B. v. Goetz case, which involved a discovery order regarding the state's computers. I know Mr. Twyford disputes whether the court should exercise the mandamus power, but I think that really goes more to the merits. I don't think he disputes that the power exists. Quickly, with regard to the discovery label, I think Mr. Twyford has confused our arguments consistently there. We'd agree that this was not a run-of-the-mill civil discovery order. What we're saying is use of the All Writs Act was improper because it sidestepped very more specific federal habeas discovery, which is a different animal than in ordinary civil litigation. So we've never argued this is a run-of-the-mill discovery order. But you're calling it discovery right there, and if we don't think it's discovery, but it's rather, as your opponent points out, investigation. Why isn't the All Writs Act appropriate in a habeas case to allow the petitioner to investigate his situation? Well, the quickest, most direct answer, Your Honor, is the All Writs Act cannot be used in a way that contravenes 2241c5, which already lays out the very limited circumstances in habeas when a court is allowed to direct the movement of a state prisoner without a finding of violation. So even if you disagree with us about whether or not this is discovery, you still have that barrier. In terms of other arguments about the district court's jurisdiction, this is not the same as a denial of visitation to attorney. That would be a problem of a constitutional dimension, and it would be a condition of confinement challenge under 1983. That's where the jurisdiction to correct that type of problem would come from. Could the prison prevent Dr. Sherry from coming to examine him at the prison? Your Honor, I think that question would be a matter of how far the access to court's constitutional right, I believe it's under the First Amendment, travels. Mr. Twyford has not made an argument here that he has a constitutional right to this evidence. And certainly here we have something a degree beyond that, because what Mr. Twyford wants would require going outside the prison walls. It's not a service that can be provided within the prison walls. I do want to note, I did not hear any response on Bays. Mr. Twyford is free to argue that to the full court or the Supreme Court that Bays misinterpreted 3599F, but at this stage it is binding authority. On Mr. Twyford's justification, we never get to a cause and prejudice analysis here, because you don't do Trevino or Martinez when the claim was raised below and adjudicated on the merits. And here if you look at Claim 7 of his post-release conviction, post-release, post-conviction relief petition, he already raised this same claim about his neurological defects. It was adjudicated on the merits by both the Ohio Trial Court and the 7th District. Therefore, we are in 2254D and Penholster where no new evidence comes in. So I disagree with my friend on the other side. We do know where this is going. This evidence is inadmissible and it's not usable in his federal habeas case. And that's the merits question, whether this is usable on the merits of a federal habeas case. If I may just... Your time has expired. I'll give you like 15 seconds. Sir, Your Honor, I would just end by saying it is not enough that Mr. Twyford thinks he has a medical reason for wanting this evidence. He needs a legal justification for how it fits into his federal habeas case. He has never given that justification. We ask that you reverse. Thank you, Your Honor. Okay. Thank you, counsel, both of you for your arguments this afternoon. We really do appreciate them. And Mr. Benza, we thank you, especially for your representation of Mr. Twyford under the Criminal Justice Act. As we say at every argument, that's a real service to Mr. Twyford and to our system at large. And it's very much appreciated. With that, we'll take the case under advisement. And Ms. Falsch, you may adjourn court. Dishonorable court is now adjourned.